```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

| | | |
|---|---|---|
| JENNIFER MILLER, | * | |
| Plaintiff, | * | |
| vs. | * | |
| MICHAEL W. NAIL, JOSEPHINE FORD, and SEAN CARROLL THOMPSON, | * | CASE NO. 4:20-CV-2 (CDL) |
| | * | |
| Defendants. | * | |

O R D E R

Jennifer Miller alleges that her probation officer, Sean Carroll Thompson, compelled her to engage in a sexual relationship with him. When Miller ended the relationship, Thompson retaliated against her by reporting her to be in violation of her probation. As a result, Miller was arrested and incarcerated. A superior court judge later revoked her probation. Miller brought this action under 42 U.S.C. § 1983 against Thompson in his individual capacity. She also asserts § 1983 claims against Thompson's former supervisors at the Georgia Department of Community Supervision, Michael W. Nail and Josephine Ford. First, Miller claims that she is entitled to injunctive relief against Nail and Ford in their official capacities. Second, Miller contends that she is entitled to damages against Nail and Ford in their individual capacities. Nail and Ford filed a motion to dismiss, arguing that Miller's

claim for injunctive relief should be dismissed for lack of standing and that they are entitled to qualified immunity on Miller's claim for damages. As discussed below, the Court grants the motion to dismiss (ECF No. 18) as to Miller's claim for injunctive relief but denies the motion as to her claim for damages against Nail and Ford in their individual capacities.

FACTUAL ALLEGATIONS

Jennifer Miller was convicted of drug charges in the Superior Court for Muscogee County, Georgia. She was placed on probation for seven years, until May 2023. Sean Carroll Thompson was a community supervision officer employed by the Georgia Department of Community Supervision, and he was assigned to conduct field visits on Miller during her probation. While on official field visits to check on Miller, Thompson pressured Miller into engaging in sexual activity with him. When Thompson made his last field visit to Miller, though, Miller declined to engage in sexual activity with Thompson. Miller asserts that Thompson retaliated against her for discontinuing their sexual relationship by reporting Miller to be in violation of her probation. As a result, Miller was arrested and incarcerated. Miller's probation was later revoked by the Superior Court, and Miller was ordered to enter and complete the Muscogee County Adult Drug Court Program, though she was later removed from the program "for failure to comply with the program requirements and

2

the balance of her probation was terminated." Am. Compl. ¶ 29, ECF No. 15.[1]

Miller brought this action under 42 U.S.C. § 1983 against Thompson in his individual capacity, asserting that Thompson violated her right to due process under the Fourteenth Amendment. Miller also asserts official capacity and individual capacity § 1983 claims against Thompson's former supervisors at the Georgia Department of Community Supervision, Michael W. Nail and Josephine Ford. Miller contends that Nail and Ford failed to impose proper monitoring requirements on probation officers like Thompson, such as a requirement that probation officers wear body cameras when interacting with probationers. *Id.* ¶ 34. Miller further alleges that Ford "was aware of, or should have been aware of," Thompson's propensity "to misuse his authority over female probationers assigned to him for supervision of their probation in order to compel female probationers to engage in a sexual relationship with him," yet Ford did not adequately monitor Thompson. *Id.* ¶ 5. And Miller alleges that "specific incidents which occurred during the two-year period before . . . Thompson began inappropriate contact with [Miller]," including "sexual contact and/or assault by male and female [probation] officers on female probationers," put both Ford and Nail on

---

[1] Miller reported that Thompson had coerced her into a sexual relationship. Thompson admitted the allegations and was found guilty of violating his oath and sexual assault of a probationer. He is now in prison.

3

notice that they needed "to take action to prevent the recurrence of sexual contact and/or assault by [probation] officers on female probationers." *Id.* ¶ 35. Finally, Miller alleges that Ford and Nail were aware or should have been aware that their failure to monitor probation officers could facilitate sexual contact or assault by community supervision officers. *Id.*

Miller seeks damages from Thompson, Nail, and Ford in their individual capacities. She also seeks injunctive relief against Nail and Ford in their official capacities. Miller wishes to represent a class of all probationers under the supervision of the Georgia Department of Supervision. *Id.* ¶ 8.

## DISCUSSION

Nail and Ford filed a motion to dismiss the claims against them. They assert that Miller does not have standing to assert her claim for injunctive relief and that they are entitled to qualified immunity on Miller's damages claims against them. The Court will address each claim in turn.

**I.   Claim for Injunctive Relief**

Miller seeks an injunction requiring Ford and Nail to "implement policies, practices, and procedures within the Department designed to remedy the constitutional violations" she alleges "and to protect probationers under the supervision of the Department from similar constitutional violations in the future at the hands of community supervision officers during in-person

4

contacts with probationers by monitoring said contacts using video and audio recording equipment." Am. Compl. 36. Nail and Ford argue that even if Miller's allegations are taken as true, Miller lacks standing to bring a claim for injunctive relief, and they moved to dismiss that claim under Federal Rule of 12(b)(1) for lack of subject matter jurisdiction.

"Article III of the Constitution limits federal courts to adjudicating actual 'cases' and 'controversies.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019). "Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing." *Id.* (quoting *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2001)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.* (quoting *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995)).

Even if Miller has standing to assert a claim for damages based on conduct that caused a past injury, that does not automatically entitle her to pursue a claim for injunctive relief. *Worthy v. City of Phenix City*, 930 F.3d 1206, 1215 (11th Cir. 2019). Rather, to "demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a *substantial likelihood that [s]he will suffer injury in the future*." *Id.* (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)). "In determining 'whether a future injury is likely to occur, [the courts] consider whether the plaintiff is likely to have another encounter with a government officer due to the same conduct that caused the past injury.'" *Id.* (quoting *J W ex rel. Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018)).

Miller contends that she has standing based on the present effects of Thompson's conduct. She also asserts that she would have remained on probation if Thompson had not reported her as being in violation of her probation.[2] But these allegations

---

[2] Miller asserts that she reported Thompson's conduct and was interviewed by the Georgia Department of Community Supervision's Office of Professional standards. Am. Compl. ¶ 25. She further asserts that Thompson admitted her allegations and was arrested. *Id.* ¶ 26. And, she alleges that her probation was formally revoked after she made the report and after Thompson was arrested. *Id.* ¶ 28. Miller does not argue or allege that there was no factual basis to support the Superior Court's decision to revoke her probation.

6

relate to Miller's *past* injuries. Miller does not sufficiently assert that there is a substantial likelihood that she will suffer a *future* injury if she is ever placed on probation again. Miller does not allege that she is on probation; she alleges that her probation was "terminated" more than a year before she filed this action. Am. Compl. ¶ 29. To be at risk of suffering the same injury Thompson inflicted, Miller would have to (1) be placed on probation again and (2) be subject to supervision by a probation officer who violates the law by attempting to coerce her into a sexual relationship. "The threat of future injury here is not sufficiently real or immediate, particularly because the main event that will trigger the potential future harm is a voluntary decision by [a new community supervision officer] to violate the law." *Worthy*, 930 F.3d at 1216.

Citing *Roe v. Wade*, 410 U.S. 113 (1973) and *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980), Miller contends that she retained standing to sue for injunctive relief even though her probation ended. But those cases do not help Miller. The portion of *Roe* Miller cites stands for the proposition that if a plaintiff has standing to bring an action at the time of filing, a change of status will not moot the action or extinguish standing if the issue is capable of repetition, yet evading review. *Roe*, 410 U.S. at 125. And *Geraghty* established that a plaintiff class representative who has standing to sue at the

7

time of filing but whose individual claim becomes moot may nonetheless appeal the denial of a class certification motion. *Geraghty*, 445 U.S. at 404. Importantly, in both *Roe* and *Geraghty*, the plaintiffs had standing when they filed suit. In contrast, here, Miller was not on probation when she filed this action; her probation had ended more than a year before she filed her Complaint. And, as discussed above, Miller does not sufficiently assert that there is a substantial likelihood that she will suffer a *future* injury if she is ever placed on probation again. Accordingly, the Court finds that Miller has not adequately alleged standing to support her claim for injunctive relief.

Finally, Miller argues that she has standing for her claim for injunctive relief because she seeks to represent a class of similarly situated female probationers who are presently serving probation sentences. But it is "well-settled that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of [herself] or any other member of the class.'" *Gerber*, 925 F.3d at 1211 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). If a plaintiff does not allege and show a personal injury, then she does not have standing; the "individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to

8

which the plaintiff belongs and which [s]he purports to represent." *Id.* (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)). "Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue." *Id.* (quoting *Griffin*, 823 F.2d at 1483). "A named plaintiff in a class action who cannot establish the requisite case or controversy between [herself] and the defendants simply cannot seek relief for anyone—not for [herself], and not for any other member of the class." *Id.* (quoting *Griffin*, 823 F.2d at 1483). For these reasons, Miller's class allegations do not save her claim for injunctive relief, and it is dismissed.

**II.  Claim for Damages**

In addition to her claim for injunctive relief, Miller seeks damages from Nail and Ford in their individual capacities, asserting that they violated her Fourteenth Amendment due process rights.  Nail and Ford argue that Miller did not adequately allege a basis for supervisory liability, and they moved to dismiss Miller's individual capacity damages claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  In evaluating whether Miller's damages claim survives Defendants' 12(b)(6) motion, the Court must accept

9

Miller's factual allegations as true and determine whether the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Nail and Ford assert that they are entitled to qualified immunity on Miller's § 1983 claims against them. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)). In deciding whether to grant qualified immunity on a motion to dismiss, the Court must accept "the factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (quoting *Dalrymple*, 334 F.3d at 994)). Here, Miller does not dispute that Nail and Ford acted within the scope of their discretionary authority when they supervised Thompson.

The next question is whether Miller adequately alleged that Nail and Ford violated clearly established law. To meet this burden, Miller must allege a factual basis for finding that (1) Thompson's actions violated Miller's clearly established

10

constitutional rights and (2) it was clearly established that a supervisor would be responsible for Thompson's constitutional violations under the circumstances. Nail and Ford do not dispute that Thompson violated Miller's clearly established constitutional rights when he committed the crime of sexual assault of a probationer. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (acknowledging Fourteenth Amendment due process liberty right against sexual assaults under color of state law); *see also Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (stating that it is a clear constitutional violation to use significant force that is "wholly unnecessary to any legitimate law enforcement purpose"); *cf. Hope v. Pelzer*, 536 U.S. 730, 745 (2002) (concluding that officials were on notice that their conduct violated clearly established law even without a case directly on point based on the "obvious cruelty inherent in" the officers' practices and the fact that the plaintiff "was treated in a way antithetical to human dignity"). Nail and Ford do, however, argue that Miller did not allege a factual basis for a § 1983 supervisory liability claim.

Supervisory officials like Nail and Ford "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003),

11

*abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that district courts may consider either prong of the qualified immunity analysis first) and *Randall v. Scott*, 610 F.3d 701, 703 (11th Cir. 2010) (finding no heightened pleading requirement)). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* at 1047-48. A plaintiff can establish the required causal connection by showing that a "history of widespread abuse" put the "responsible supervisor on notice of the need to correct the alleged deprivation" but the supervisor failed to do so. *Id.* at 1048 (quoting *Cottone*, 326 F.3d at 1360). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

Here, Miller does not allege that Nail or Ford participated in or directed Thompson's conduct. She also does not allege that Nail or Ford knew about Thompson's specific conduct with her but failed to stop it. But she does allege that Ford "was aware of, or should have been aware of," Thompson's propensity "to misuse his authority over female probationers assigned to him for

12

supervision of their probation in order to compel female probationers to engage in a sexual relationship with him," yet Ford did not adequately monitor Thompson. Am. Compl. ¶ 5. And Miller alleges that "specific incidents which occurred during the two-year period before . . . Thompson began inappropriate contact with [Miller]," including "sexual contact and/or assault by male and female [probation] officers on female probationers," put both Ford and Nail on notice that they needed "to take action to prevent the recurrence of sexual contact and/or assault by [probation] officers on female probationers." *Id.* ¶ 35. Taking the allegations as true and drawing all reasonable inferences in Miller's favor as the Court must do at this stage in the litigation, Miller alleges that Ford knew of Thompson's propensity to engage in inappropriate conduct with female probationers and that Nail and Ford were both aware of specific incidents of sexual conduct by probation officers on female probationers, yet they did nothing to keep Thompson from continuing to violate the clearly established rights of female probationers. In light of the clearly established law that probation officers may not sexually assault their probationers, no reasonable person in Nail or Ford's position could have believed that doing nothing in light of the information they had was lawful. *Cf. Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995)

(affirming denial of qualified immunity to a supervisor in a § 1983/equal protection action where the supervisor did nothing in response to a subordinate's sexual harassment, discrimination, and creation of a hostile work environment for the employee's female colleagues). The Court therefore denies Nail and Ford's motion to dismiss based on qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 18) is granted as to Miller's claim for injunctive relief. Defendants' motion to dismiss Miller's individual capacity claims for damages against Nail and Ford based on qualified immunity is denied, and those claims remain pending. Thompson did not move to dismiss the individual capacity § 1983 claim against him, and Miller's claim against Thompson remains pending.

IT IS SO ORDERED, this 16th day of December, 2020.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA