IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JENNIFER L. MILLER, | * |
| Plaintiff, | * |
| vs. | * |
| SEAN CARROLL THOMPSON, JOSEPHINE FORD, and MICHAEL W. NAIL, | *  CASE NO. 4:20-CV-2 (CDL) |
| | * |
| Defendants. | * |

O R D E R

Jennifer Miller asserts that her community surveillance officer, Sean Carroll Thompson, forced her to have sex with him. She brought a claim against Thompson under 42 U.S.C. § 1983, arguing that Thompson violated her constitutional right against sexual assaults under color of state law. Miller also brought claims against Thompson's former supervisors, Michael W. Nail and Josephine Ford. Presently pending before the Court is the summary judgment motion of Nail and Ford. As discussed below, Nail and Ford are entitled to qualified immunity on Miller's claims against them, so their summary judgment motion (ECF No. 40) is granted. Also pending before the Court are Miller's motion for default judgment as to Thompson (ECF No. 45) and her summary judgment motion as to Thompson (ECF No. 42). Those motions are granted as to Thompson's liability, but the Court must hold a hearing on the issue of damages.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

In 2016, Miller was convicted of drug charges in the Superior Court of Muscogee County, Georgia, and she was sentenced to seven years of probation. Pl.'s Dep. 13:3-9, ECF No. 44; Am. Compl. ¶ 9, ECF No. 15. Thompson, an employee of the Georgia Department of Community Supervision, was Miller's community surveillance officer.[1] *Id.* at 15:14-19. Thompson conducted field visits with Miller seven times during Miller's probation. *Id.* at 17:3-6; Am. Compl. ¶ 10. During the third

---

[1] Community surveillance officers assist community supervision officers. For the sake of simplicity, the Court refers to Thompson as a probation officer.

field visit, Thompson discovered that Miller had been drinking, in violation of her probation conditions. Thompson was "kind of flirty" and told Miller not to worry because he would not say anything. Pl.'s Dep. 20:17-23. Thompson did not touch Miller. *Id.* at 21:1-3.

Nothing significant happened during the fourth field visit, which was a curfew check, although Miller did state that Thompson flirted with her. During the fifth field visit, Thompson asked to see Miller's bedroom. While they were in her bedroom, Thompson pulled Miller to him, put his hand down her pants and touched her vagina. *Id.* at 27:16-28:8; Pl.'s Aff. ¶ 14, ECF No. 53-3. Miller was able to discourage Thompson from continuing the assault by reminding him that there were other people in the house. Pl.'s Dep. 28:22-29:9. The sixth field visit was on November 7, 2017, about thirteen days after the fifth. Thompson arrived when Miller was alone in the house. Knowing that there were security cameras in the house, Thompson asked Miller to take him to a location without security cameras. *Id.* at 29:20-30:1. Thompson forced Miller to perform oral sex on him and engage in sexual intercourse. *Id.* at 30:8-21. Miller was afraid that if she did not comply with Thompson's demand, he would report that she violated her probation conditions. Pl.'s Aff. ¶ 15. Thompson told Miller not to tell anyone what happened, then he left. Pl.'s Dep. 31:1-5. Eight

days after the sixth field visit, Thompson and Miller had one more field visit during which no physical contact occurred.

Sometime after the final field visit, Thompson reported that Miller was in violation of her probation. As a result, Miller was arrested on January 31, 2018. Pl.'s Aff. ¶ 23. Miller's probation was revoked, and she was ordered to complete the Muscogee County Adult Drug Court Program. Miller was later removed from that program for failure to comply with its requirements, and the balance of her probation was terminated. She is currently in prison.

Soon after her January 2018 arrest, Miller reported to the authorities for the first time that Thompson had forced her to have sex with him. Upon learning of Miller's accusations, Thompson's direct supervisor, Ford, suspended Thompson pending an investigation. Thompson later confessed to having sex with Miller during a field visit. Thompson Dep. 43:23-44:6, 58:9-18, ECF No. 47. Thompson was subsequently terminated from his job and later convicted on several criminal charges, resulting in an imprisonment sentence.

## DISCUSSION

### I. Miller's Claims Against Ford and Nail

Ford was Thompson's direct supervisor, and Nail was the commissioner of the Georgia Department of Community Supervision ("Department"). Miller brought § 1983 claims against Nail and

4

Ford in their individual capacities. Nail and Ford contend that they are entitled to qualified immunity, which "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)). Because Miller does not dispute that Nail and Ford were acting within the scope of their discretionary authority when they supervised Thompson and made decisions regarding policies at the Department, Miller must demonstrate that qualified immunity is inappropriate. *Id.* at 1099. "To overcome the qualified immunity defense," Miller must show that the evidence construed in the light most favorable to her establishes that a constitutional violation occurred. *Id.* at 1099. She "must also show that law existing at the time the conduct occurred clearly established that the conduct violated the constitution." *Id.*

To meet her burden, Miller must establish a factual basis for finding that (1) Thompson's actions violated Miller's clearly established constitutional rights and (2) it was clearly established that a supervisor would be responsible for Thompson's constitutional violations under the circumstances. Nail and Ford assume for purposes of this motion that Thompson

5

violated Miller's clearly established constitutional rights when he committed the crime of sexual assault of a probationer during a field visit at her residence. *See Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (stating that it is a clear constitutional violation for an officer to use significant force that is "wholly unnecessary to any legitimate law enforcement purpose"); *cf. Hope v. Pelzer*, 536 U.S. 730, 745 (2002) (concluding that officials were on notice that their conduct violated clearly established law even without a case directly on point based on the "obvious cruelty inherent in" the officers' practices and the fact that the plaintiff "was treated in a way antithetical to human dignity"). Nail and Ford do, however, argue that Miller did not point to sufficient facts to establish a § 1983 supervisory liability claim.

Supervisory officials like Nail and Ford "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that district courts may consider either prong of the qualified immunity analysis first) and *Randall v. Scott*, 610 F.3d 701, 703 (11th Cir. 2010) (finding no heightened pleading requirement)). "Instead, to hold a

supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* at 1047-48.  A plaintiff can establish the required causal connection by showing that a "history of widespread abuse" put the "responsible supervisor on notice of the need to correct the alleged deprivation" but the supervisor failed to do so.  *Id.* at 1048 (quoting *Cottone*, 326 F.3d at 1360). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  *Id.* (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

Miller did not point to evidence that Nail or Ford participated in or directed Thompson's conduct.  She did not point to any evidence that another probationer complained about Thompson before he assaulted her.  Miller also did not point to any evidence that either Nail or Ford knew about Thompson's specific conduct with her but failed to stop it.  And she did not point to evidence that Nail or Ford had specific knowledge of any propensity Thompson may have had to engage in

inappropriate relationships with probationers or misuse his authority to compel probationers to have sex with him.[2]

Regarding her claim against Ford, Miller argues that her evidence would permit a reasonable juror to find a causal connection between Ford's actions and Thompson's constitutional violations. Miller claims that Ford did not adequately monitor Thompson even though she knew that Thompson might try to compel Miller to have sex with him. In support of this argument, Miller pointed to evidence that she was called to Ford's office for missing a day at the reporting center. Miller believes that she told Ford during the meeting that Thompson was "inappropriate" with her. Pl.'s Dep. 32:7-23. Miller does not remember when she met with Ford, what words she used, or what inappropriate things Thompson had done when Miller made the report to Ford—"if it was just flirting or what." Pl.'s Dep. 32:7-33:20. Miller could not say whether the meeting happened before Thompson assaulted Miller by putting his hand down her pants and touching her vagina. Miller believes the meeting was before Thompson forced her to have sex with him because if her meeting had been after that, she "would have told . . . Ford that . . . Thompson forced [her] to have sexual intercourse with

---

[2] In her complaint, Miller alleged that Ford was aware that Thompson had a propensity to misuse his authority to compel probationers to have sex with him. That allegation was enough to withstand Ford's motion to dismiss, but at the summary judgment stage Miller must point to *evidence* to support the assertion. She did not.

8

him, rather than that he had been inappropriate with [her]." Pl.'s Aff. ¶ 22. Miller does not recall Ford doing anything in response to her statement. Pl.'s Dep. 33:1-7.

Miller asserts that Ford's failure to investigate her report is clear evidence of deliberate indifference to Miller's constitutional rights. But to establish deliberate indifference, Miller must present evidence that Ford knew there was a serious risk that Thompson would act unlawfully but made a conscious choice not to stop him. Miller did not point to such evidence. Instead, Miller maintains that she thinks she told Ford that Thompson was being inappropriate with her sometime before Thompson forced Miller to have sex with him. Miller did not point to evidence that she reported any sexual assault to Ford. Given that Miller cannot recall the timing of the meeting, what she told Ford, or what facts Ford might have uncovered if she had asked Miller follow-up questions, it is speculation to conclude that Ford was aware (or should have been aware) that Thompson might try to compel Miller to have sex with him. Thus, the present record—even viewed in the light most favorable to Miller—does not support the conclusion that Ford was aware of a serious risk posed by Thompson but was deliberately indifferent to it. Moreover, Miller did not point to any authority clearly establishing that a supervisor could be liable under § 1983 by failing to investigate or monitor an

9

employee based on a report of unspecified inappropriate behavior under the circumstances presented here. The Court thus concludes that Ford is entitled to qualified immunity.

Turning to Miller's claim against Nail, Miller asserts that Nail was aware of a history of widespread abuse by probation officers and failed to correct it. In support of this argument, Miller pointed to evidence that Nail, as commissioner of the Department, was aware that between 2015 (when the Department was established) and October 2017, there were nineteen investigations of reports that probation officers engaged in sexually inappropriate conduct. None of these investigations involved Thompson. During this timeframe, the Department had between 1,100 and 1,200 probation officers. The reports of misconduct were substantiated for five officers in 2015, four officers in 2016, and four officers in 2017. Almost all of these officers resigned or were terminated.[3] Six of the investigations determined that the allegations were unfounded. Thus, the present record suggests that the Department had a process for investigating specific allegations of sexual misconduct by probation officers and that officers were disciplined when the allegations were substantiated. Miller also pointed to evidence that the Department sent a summary of

---

[3] One officer received a letter of concern based on inappropriate personal contact, and it is not clear what discipline one of the officers received.

its investigations to the entire staff so they could see the subject matter and outcome of each investigation. Nail Dep. 45:21-47:8, ECF No. 40-4.

Miller argues that this process was not adequate. She maintains that Nail was deliberately indifferent to probationers' constitutional rights because he knew that there were four or five substantiated complaints of sexual misconduct by probation officers each year (who were disciplined on a case-by-case basis) but he failed to expeditiously implement a policy requiring all probation officers to wear body cameras. It is undisputed that in February 2017 the Department established a policy for probation officers to wear body cameras when interacting with their supervisees. The implementation began with a small pilot program, then it took several months to do a wider roll-out across the state.[4]

The Court finds unpersuasive for qualified immunity purposes Miller's argument that Nail clearly was deliberately indifferent to her constitutional rights because body cameras were not distributed to Columbus probation officers before Thompson assaulted Miller. Miller has not pointed to any authority establishing that a failure to expedite implementing the body camera policy could amount to deliberate indifference

---

[4] Miller points out that the primary purpose of the body camera program was for training purposes, but she believes that such a program could prevent probation officers from committing sexual assault.

11

under the circumstances presented here. The current record demonstrates that the Department attempted to address probation officer misconduct. A process existed for investigating reports of probation officer misconduct; probation officers were punished when the reports of misconduct were substantiated; probation officers received summary reports of the outcome of the investigation and thus knew that almost all substantiated reports of sexual misconduct ended in the probation officer's loss of his job; and the Department was in the process of implementing a body camera program for probation officers. Under these circumstances, Miller has failed to meet her burden of demonstrating that Nail violated clearly established law. Thus, Nail is entitled to qualified immunity.

## II. Miller's Claims Against Thompson

In addition to her claims against Ford and Nail, Miller brought claims against Thompson. Thompson was served with Miller's complaint but did not answer. The Clerk entered a default against him. By his default, Thompson admitted the well-pleaded allegations of fact in Miller's complaint. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *accord Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). In addition, Thompson was served with

12

Miller's summary judgment motion, including her statement of undisputed material facts. Thompson did not respond, so under Local Rule 56 Miller's fact statement is deemed admitted as to Thompson. *See* M.D. Ga. R. 56. Therefore, the facts recounted above—which are alleged in the operative complaint and are supported by the record evidence—are deemed admitted.

Based on the admitted facts, Thompson violated Miller's constitutional rights when he committed the crime of sexual assault of a probationer. *Lee*, 284 F.3d at 1199 (stating that it is a clear constitutional violation for an officer to use significant force that is "wholly unnecessary to any legitimate law enforcement purpose"). Accordingly, Miller is entitled to summary judgment on her § 1983 claim against Thompson based on Thompson's sexual assault of her. Miller did not offer any specific evidence of damages, other than to briefly describe the emotional distress she suffered. Therefore, the Court will hold a hearing on the amount of damages and enter a final judgment after that hearing.[5]

---

[5] As a final note, the Court observes that Plaintiff has likely mischaracterized the constitutional violation here. Her complaint describes a Fourteenth Amendment substantive due process claim. Although the case law is somewhat muddled on the issue, the Court believes that the Fourth Amendment provides the constitutional source of the right at issue here. "The Fourth Amendment's protection against unreasonable searches and seizures applies to probationers." *United States v. Riley*, 706 F. App'x 956, 959 (11th Cir. 2017) (per curiam). And claims that officers used excessive force in the course of an "investigatory stop[] or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."

13

CONCLUSION

For the reasons set forth above, Nail and Ford are entitled to qualified immunity, and their summary judgment motion (ECF No. 40) is granted. Miller's motion for default judgment as to Thompson (ECF No. 45) and her summary judgment motion as to Thompson (ECF No. 42) are granted as to Thompson's liability. The Court will enter final judgment following the hearing on Miller's damages.

---

*Graham v. Connor*, 490 U.S. 386, 395 (1989); *accord Richmond v. Badia*, No. 20-14337, 2022 WL 3581305, at *5 (11th Cir. Aug. 22, 2022) (stating that excessive force claims in the context of an investigatory stop are judged under the Fourth Amendment); *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) (noting that the Fourth Amendment "protects people from 'unreasonable' seizures, and 'unreasonable' contemplates" harassing and abusive behavior towards a detainee during a seizure); *see also L. T. by Snorton v. Owens*, 808 F. App'x 814, 821 (11th Cir. 2020) (per curiam) (applying Fourth Amendment "seizure of a free citizen" analysis to seizure of suspect who was shot when an officer attempted to serve him with an arrest warrant for a probation violation). Even assuming that a search of Miller's residence and an investigatory stop of her was lawful because of her status as a probationer, the manner in which Thompson applied physical force to restrain her movement during the investigatory field visit was not. A seizure is unreasonable if the officer uses force that is unnecessary to any legitimate law enforcement purpose. *Richmond*, 2022 WL 3581305, at *5 ("[T]he absence of a legitimate law enforcement justification for using force is indicative of excessive force."). Sexual assault is a criminal act, obviously not permitted for any legitimate law enforcement purpose. Even if an argument could be made that it was not clearly established that the Fourth Amendment is the source of the right at issue here, Thompson did not make that argument, he did not seek qualified immunity, and he did not establish that he was acting in his discretionary authority when he sexually assaulted Miller. Furthermore, Nail and Ford did not contest that Thompson violated Miller's clearly established constitutional rights. So whether the right violated arises from the Fourteenth Amendment or the Fourth is largely irrelevant here.

14

IT IS SO ORDERED, this 24th day of August, 2022.

                                                  S/Clay D. Land
                                                  CLAY D. LAND
                                                  U.S. DISTRICT COURT JUDGE
                                                  MIDDLE DISTRICT OF GEORGIA